**Justin M. Baxter,** Oregon State Bar ID Number 992178
Email: justin@baxterlaw.com
BAXTER & BAXTER, LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225
Telephone (503) 297-9031
Facsimile (503) 291-9172

**Ben Bingham,** *subject to admission pro hac vice*
Email: ben@binghamandlea.com
Bingham & Lea, P.C.
319 Maverick Street
San Antonio, Texas 78212
Telephone 210-224-2885
Facsimile 210-224-0141

**William M. Clanton,** *subject to admission pro hac vice*
Email: bill@clantonlawoffice.com
Law Office of Bill Clanton, P.C.
926 Chulie Dr.
San Antonio, Texas 78216
Telephone 210-226-0800
Facsimile 210-338-8660

　　　　*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| **ASHLYN MEEKS, KENNETH MAHL, AND ANNE McLAUGHLIN and All Others Similarly Situated,**<br><br>　　　Plaintiffs,<br><br>　　　vs.<br><br>**TRANS UNION, LLC**<br><br>　　　Defendant. | Case No. _____<br><br><br>**CLASS ACTION ALLEGATION COMPLAINT**<br><br>**(Fair Credit Reporting Act)**<br><br>**JURY TRIAL REQUESTED** |

Plaintiffs Ashlyn Meeks, Kenneth Mahl, Anne McLaughlin, and all others similarly situated, file this Complaint asserting claims against Defendant, TransUnion, LLC (below "Trans Union") and show:

## PARTIES

1.    Ashlyn Meeks is a natural person residing in this federal judicial district.

2.    Kenneth Mahl is a natural person residing in the State of Texas.

3.    Anne McLaughlin is a natural person residing in the State of Texas.

4.    Defendant, TransUnion, LLC, is a limited liability company headquartered in Chicago, Illinois, but which regularly does business in this judicial district.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because the rights and obligation of the parties in this action are defined by the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681 and 15 U.S.C. § 1681p, which provides that an action to enforce any liability created under 15 U.S.C. § 1681 may be brought in any appropriate United States district court, without regard to the amount in controversy.

6.    This Court has jurisdiction over Trans Union because it purposefully and continuously does business in this state and this judicial district.

7.    Venue in this district is proper pursuant to 28 U.S.C. § 1391b because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district.

\\\ \\\ \\\

\\\ \\\ \\\

\\\ \\\ \\\

## CONTEXT OF THE CASE

**A. The "Centralized Source" for Free Credit Reports — www.annualcreditreport.com.**

8.        Defendant Trans Union, LLC is a consumer reporting agency as defined by 15 U.C.C. 1681a (f) and a consumer reporting agency that complies and maintains files on consumer on a nationwide basis, as defined by 15 U.S.C. 1681a (p).

9.        Section 1681g of the FCRA provides that that every consumer reporting agency "shall, upon request, …clearly and accurately disclose to the consumer all information in the consumer's credit file at the time of the requests..."[1]

10.        Section 1681j(2) of the FCRA provides that all consumer reporting agencies "shall make the disclosure required by § 1681g once during any 12-month period upon request of the consumer and without charge to the consumer. This "free annual credit report" section applies only if the request from the consumer is made using the "centralized source" established in accordance with the Fair and Accurate Credit Transactions Act of 2003 ("FACTA").

11.        The "purpose of the centralized source is to enable consumers to make a single request to obtain annual file disclosures[2] from all nationwide consumer reporting agencies, as required by § 1681j(a)." 12 C.F.R. § 1022.136(a). In more common language, these statutes and regulations give consumers the right to see all information that the credit reporting agencies have

---

[1] Certain exceptions apply but are not relevant to this case.

[2] "Annual file disclosure" means a file disclosure that is provided to a consumer, upon the consumer's request and without charge, once in any twelve- month period. 12 C.F.R. § 1022.130 (a). A "file disclosure" means a disclosure by a consumer reporting agency pursuant to § 1681g. with certain exception not relevant here. § 1681g requires that every consumer reporting agency "shall, upon request…clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request. 1681g(a)(1). The term "file" when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." §1681a(g).

about them, for free, and without any other term or condition, if they make the request through the "centralized source".

12.    The centralized source "**shall** enable consumers to request annual file disclosure by **any** of the following **request methods**, at the **consumers option**:

      (1)    a single, dedicated website,

      (2)    a single dedicated toll-free number, and

      (3)    mail directed to a single address.[3]

13.    The single, dedicated website or centralized source established by the Big Three credit reporting agencies[4] is at www.annualcreditreport.com.

14.    In the regulations applicable to the centralized source, a "request method" means "the method *by which a consumer chooses* to communicate a request for an annual file disclosure." 12 C.F.R. § 1022.130(j) (emphasis added). In other words, it is the consumer who gets to choose by which method he or she will obtain their annual credit report. If the consumer chooses to obtain their credit report from the single, dedicated website www.annualcreditreport.com he or she "shall" be able to do so, once every 12-month period, free of charge or other condition. 12 C.F.R. § 1022.136(h)(3).

15.    The free annual credit report regulations also provide that if any of the Big Three can make a consumer's credit file available to a third person, it "**shall**…provide an annual disclosure to such consumer if he consumer makes a request through the centralized source." 12 C.F.R. 1022.130(d).

---

[3] 12 CFR 1022. 136 (b)(1) (emphasis added)

[4] The Big Three refers to credit reporting agencies TransUnion, LLC, Experian and Equifax.

16.     Further, credit reporting agencies, including Trans Union are prohibited from asking or requiring consumers to agree to terms or conditions in connection with obtaining their free annual credit reports. 12 C.F.R. 1022. § 136(h)(3).

## B. The Credit Report Dispute Process

17.     To better understand this case, it is helpful to have a general understanding of the credit report error and dispute process under the FCRA. If, after reviewing their credit report, a consumer discovers an error on his or her credit report, the consumer can then initiate with a credit reporting agency, online or otherwise, a dispute concerning the alleged error. The credit reporting agency is then supposed to conduct a "reinvestigation" of the alleged error to determine the accuracy of the disputed item. If, after reinvestigation, the credit reporting agency determines that the disputed item is reported correctly, it advises the consumer of such and no change is made to the consumers file. If the consumer disagrees with the results of the reinvestigation, the consumer can then sue the credit reporting agency and attempt to correct the disputed information in their file.

18.     If the consumer sues credit reporting agency Trans Union, Trans Union retaliates. Even if the consumer turns out to be correct about the disputed information in their file, Trans Union, for up to three years, denies the consumer access to his or her credit report on www.annualcreditreport.com. This happens even if Trans Union was incorrect and then corrects the error(s) contained in the consumer's file.

19.     One of Trans Union's lawyers described this refusal of the consumer's right of access to www.annuancreditreport.com as a "long-standing policy" and describes the access rejection as lasting "at least three years." Stated differently, Trans Union conditions access to www.annualcreditreport.com; the condition is that the consumer has not sued Trans Union in the

past. This obstruction of access not only violates the consumers' FCRA's right to access their file online, but it also inhibits the accuracy verification process, the dispute process, and the ability of the consumer to detect identity theft.

## FACTS CONCERNING PLAINTIFFS

20.    Plaintiff Ashlyn Meeks sued Trans Union and settled with Trans Union. On or about November 20, 2019, Ms. Meeks attempted to access her credit file disclosure through the www.annualcreditreport.com website. The website did not return a credit file disclosure, but rather the following message: "Unfortunately, your request cannot be fulfilled online at this time, based upon the data provided."

21.    Plaintiff Anne McLaughlin sued Trans Union and settled her case. Several months after the settlement, she attempted to go to the centralized source www.annualcreditreport.com to ensure that Trans Union has corrected her credit report as agreed. Ms. McLaughlin could not access her credit report online. Ms. McLaughlin's attorney assumed that Trans Union had placed a "litigation hold" on the credit file due to the lawsuit, so he contacted Trans Union's lawyer to request that the litigation hold be removed. That's when, over a series of emails, it was revealed that Trans Union has a "long-standing policy" of blocking access to www.annualcreditreport.com for those who have previously sued Trans Union. It was revealed that if a consumer had sued Trans Union, Trans Union would block the consumer from accessing his or her online access to www.annualcreditreport.com for up to three years. The blocking policy was described in emails as being applied "uniformly," with "no realistic way to avoid it." The policy has been "this way for many, many years." The Trans Union lawyer described the statutorily mandated centralized source/single dedicated website as "nothing more than a convenience to the consumer," as opposed to a federal right created by Congress.

22.      Plaintiff Kenneth Mahl had a similar experience. Mr. Mahl sued Trans Union, settled his case, and now can't access his credit file at www.annualcreditreport.com. Trans Union's attorney has confirmed in an email that "when a consumer files a lawsuit against Trans Union, the file is locked for a period of generally about 3 years to prevent mishandling and to ensure only Trans Union operators can provide the report. Until that period is up, Mr. Mahl will not be able to use sites like the one below to view his report." The reference to "sites like the one below" refers to www.annualcreditreport.com.

## PLAINTIFFS' STANDING

23.      To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Kaiser v Cascade Capital, LLC*, No. 3:16-cv-00744 AC, 2018 U.S. Dist LEXIS 51845 at *5 (D. Ore. 2018) (internal citations and quotations omitted).

24.      An "injury in fact" is one that is (a) concrete and particularized and (b) actual or imminent. *Id*. a "concrete" injury must be *de facto*; it must actually exist. However, "concrete is not synonymous with "tangible" Id. In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. Article III standing requires a concrete injury even in the context of a statutory violation, and a "bare procedural violation" does not meet Article III standing requirements. However, a sufficiently strong risk of harm can satisfy the requirement of concreteness. *Id*. That is, some statutory violations do establish concrete harm. *Id*. (citing *Robins v. Spokeo*, Inc, 867 F. 3d 1108, 1113 (9th Cir. 2017). An alleged violation of a statute can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interest and where the procedural violation

presents a risk of real harm to that concrete interest. *Id.*

25.    When the FCRA was enacted, Congress made these findings and this statement of

purpose:

§1681. Congressional findings of statement and purpose.

(a) Accuracy and fairness of credit reporting

The Congress makes the following findings:

(1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

(b) Reasonable Procedures

It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

26.    Congress was clearly concerned about the accuracy of credit reports. The

reasonable procedures to help effectuate the purpose of accuracy include the provisions that

allow consumers to access, for free and without any conditions, their credit file once a year.

After all, who would know better about the accuracy of a consumer's credit report than the

consumer about whom the report is made? Integral to the accuracy of consumer credit reports is

the process whereby consumers can review their credit reports for accuracy and dispute items that they feel are inaccurate. Blocking access to www.annualcreditreport.com in retaliation for consumers exercising their FCRA dispute rights, as has happened to Plaintiffs and the putative class, undermines the very purpose of the FCRA as express by Congress. How can accuracy be maintained if consumers are denied access to review their consumer files online? Plaintiff have actually suffered credit file blocking by Trans Union; they have tried to access their credit files online at the one centralized source, www.annualcreditreport.com, and been denied access in abrogation of the rights the FCRA grants them. The injuries, as alleged herein are concrete and particularized and actual or imminent, not conjectural or hypothetical. See, *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112- 1118 (9th Cir. 2017) (discussing standing in FCRA case).

27.    In affirming the standing of plaintiffs in a recent FCRA case, the Ninth Circuit recognized that FCRA provisions work to protect consumers' interests in having access to the information in their credit reports upon request and understanding how to correct inaccurate information in their credit reports upon receipt. *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1029 (9th Cir. 2020). The Ninth Circuit affirmed that consumers' right of access to their credit reports goes "to the core of Congress's purpose in enacting the FCRA: "to protect consumers from the transmission of inaccurate information about them[.]" and that the primary purpose of the statutory scheme provided by the disclosure in § 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established under [the FCRA]. (internal citations and quotation omitted.) Id.

28.    The Ninth Circuit went further to declare:

"These are not mere procedural or technical requirements. They protect consumers' concrete interest in accessing important information about themselves

and understanding how to dispute inaccurate information before it reaches potential creditors. *Cf. Syed v. M-I, LLC*, 853 F.3d 492, 499-500 (9th Cir. 2017) (holding that the FCRA provision requiring prospective employers to obtain a consumer's consent before obtaining a credit report in a standalone document protected a concrete informational and privacy interest); *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 490-93 (9th Cir. 2019) (holding that every violation of the FCRA provision that prohibits obtaining a credit report for an unauthorized purpose violates the consumer's substantive privacy interest, and the consumer has standing "regardless whether the credit report is published or otherwise used by [a] third-party" and "need not allege any further harm" (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983-84 (9th Cir. 2017)). And although the FCRA's disclosure requirements may seem "procedural" in nature, Congress enacted them because they are the only practical way to protect consumers' interests in fair and accurate credit reporting. *See Spokeo III*, 867 F.3d at 1113."

29.    Each Plaintiff has actually suffered credit file blocking by Trans Union; they have tried to access their credit files online at www.annualcreditreport.com and been denied access in abrogation of the rights granted to them by the FCRA. Their injuries, as alleged herein are concrete and particularized and actual or imminent, and not conjectural nor hypothetical. See, *Ramirez v. TransUnion LLC*, 951 F.3d at 1029-30; *Robins v. Spokeo, Inc.*, 867 F.3d at 1112-1118.

30.    Plaintiffs' injuries are "fairly traceable" to Trans Union's conduct if the claimed injury flows from Trans Union's conduct or has a causal connection to Trans Union's conduct. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560; 112 S. Ct. 2130, 1236 (1992). In this case, Trans

Union has unilaterally, purposefully, and willfully terminated the statutory right of Plaintiffs to access online their Trans Union credit files. To obtain the online credit file that they are entitled to obtain instantaneously for free Trans Union retaliates by making those who have sued Trans Union either make a written request to Trans Union, and wait weeks for a response, or pay their lawyer to contact Trans Union's lawyer to request the credit reports, which may also take weeks or longer, Thus, correction of errors on credit reports go uncorrected for much longer than if online access were permitted by Tran Union, as required by law. If the credit report has errors, consumers are effectively deterred from applying for credit pending resolution of the errors; denial of online access protracts this situation. Any delay in accessing their credit reports exposes Plaintiffs to a real risk of harm in terms of protecting the accuracy of their credit reporting and identifying any indications of identity theft or identifying other items that affect their credit rating.

31.     Here, Plaintiffs have alleged a concrete and particularized violation of a statutory right. Those injuries are fairly traceable to the conduct of Trans Union. Thus, Plaintiffs have standing to bring the claims made herein.

## CIVIL LIABILITY FOR WILLFUL NON-COMPLIANCE

32.     Plaintiffs reallege all the allegations in the preceding paragraphs and allege that Trans Union has violated 15 U.S.C. § 1681g and 15 U.S.C. § 1681j by blocking access to www.annualcreditreport.com to those who have sued Trans Union.

33.     There can be no doubt that Trans Union's retaliatory blocking actions are willful and done with reckless disregard to its obligation under the FCRA and of the rights of Plaintiffs and the class. Trans Union has chosen to not to comply with 15 U.S.C. § 1681g and 15 U.S.C. § 1681j, and thus is liable to Plaintiffs and the class for statutory damages of no less than $100 and

not more than $1,000 per violation and such amount of punitive damages as the Court may

allow, together with costs and reasonable attorney fees as determined by the Court. 15 U.S.C. §

1681n (a)(1)-(3).

## CLASS ALLEGATIONS

34.    Plaintiffs seek to certify a class of those natural persons, who, in the last 5 years

has had their access to their credit file disclosure via www.annualcreditreport.com blocked by

Trans Union after the person sued Trans Union.

35.    The identities of all class members are readily ascertainable from the records of

Trans Union.

36.    This action has been brought and may be properly maintained, as a class action

pursuant to the provisions of Fed. R. Civ. P. 23 because there is a well-defined community of

interest in the litigation in that:

      a.    Numerosity. The Plaintiffs are informed and believe, and on that basis

allege, that the Class defined above are so numerous that joinder of all

members would be impractical. There are sufficient numbers of

putative class members such that Trans Union has created its own

policies to deal with them.

      b.    Commonality. Common questions of law and fact exist as to all

members of the Class;

      c.    Typicality. The Plaintiffs' claims are typical of the claims of the class

members. Plaintiffs and all members of the Class have claims arising

out of the Trans Union's common uniform course of conduct as

alleged in this Complaint.

    d.   Adequacy. The Plaintiffs will fairly and adequately protect the interests of the class members insofar as Plaintiffs have no interests that are averse to the absent class members. The Plaintiffs are committed to vigorously litigating this matter. Plaintiffs have also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

37.    Plaintiffs expect to seek certification of the Class under Fed. R. Civ. P. 23(b)(1)(3) because:

    a.   The questions of law and fact common to members of the Class appear to predominate over any questions affecting an individual member, and

    b.   A class action would be superior to other available methods for the fair and efficient adjudication of the controversy because individual joinder of all members would be impracticable, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender, and important public interest will be served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

38.    Based on discovery and further investigation Plaintiffs may, in addition to moving for class certification using modified definitions of the class, class claims, and the class period, and/or seek class certification only as to issues as permitted under Fed. R. Civ. P. 23(c)(4). Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

## JURY DEMAND

39.    Plaintiffs request a trial by jury.

## PRAYER FOR RELIEF

40.    WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon trial Trans Union be found liable for willful violation of the FCRA, and that Plaintiff and the class be awarded statutory damages of not less than $100 and not more than $1,000.00 for each violation of the FCRA as alleged herein, together with such amount of punitive damages as the Court may allow, and costs of the action together with reasonable attorneys' fees as determined by the Court.

DATED this 5th day of June 2020.

Respectfully submitted,

s/ Justin M. Baxter
**Justin M. Baxter,** Oregon State Bar ID Number 992178
Email: justin@baxterlaw.com
BAXTER & BAXTER, LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225
Telephone (503) 297-9031
Facsimile (503) 291-9172

**Ben Bingham,** *subject to admission pro hac vice*
State Bar of Texas #02322350
Email: ben@binghamandlea.com
Bingham & Lea, P.C.
319 Maverick Street

Page 14  – **CLASS ACTION ALLEGATION COMPLAINT**

San Antonio, Texas 78212
Telephone 210-224-2885
Facsimile 210-224-0141

**William M. Clanton,** *subject to admission pro hac vice*
**State Bar of Texas #24049436**
Email: bill@clantonlawoffice.com
Law Office of Bill Clanton, P.C.
926 Chulie Dr.
San Antonio, Texas 78216
Telephone 210-226-0800
Facsimile 210-338-8660

*Attorneys for Plaintiffs*